**Affirmed and Memorandum Opinion filed December 20, 2018.**



In the

# Fourteenth Court of Appeals

### NO. 14-17-00168-CR

### QUINCY RASHARD CARTER, Appellant

### v.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 16CR0474**

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Quincy Rashard Carter of possession of a firearm by a felon. *See* Tex. Penal Code Ann. § 46.04 (West 2018). The jury found two enhancements true and sentenced appellant to 40 years' confinement. In two issues on appeal, appellant claims (1) the trial court erred in overruling his *Batson*[1] challenge, and (2) his trial counsel provided ineffective assistance during the

---

[1] *Batson v. Kentucky*, 476 U.S. 79 (1986).

punishment phase of trial by not investigating and presenting for the jury's consideration evidence of appellant's alleged "mental retardation and mental health problems" as mitigating evidence. We affirm.

## I. BACKGROUND

On January 19, 2016, appellant's ex-wife, Dora Cortez, brought their children to him for a visit. Visits between appellant and his children were infrequent. On this occasion, Cortez had asked him to speak to the children because she was having difficulty with their son.

After dropping the children off, Cortez attempted to contact appellant about the return of the children. Appellant did not initially respond. When he did respond, he asked Cortez "something along the lines like, [i]t doesn't feel good for someone to keep your kids from you, does it?"

Cortez went to the Texas City Police Department for help. She called appellant and told him she was at the police department. When appellant asked her why, Cortez told him because he was "making it seem like" he was not going to return the children to her. After further conversation, appellant told Cortez to come and pick up the children.

Cortez went to appellant's apartment complex to pick up the children. Cortez's boyfriend and Officer Charles with the Texas City Police Department also went to the complex to help, but they went into a different entrance of the complex. When Cortez arrived, appellant and the children walked up to the car and got into the back seat. Appellant told Cortez to take him to La Marque. After some argument, Cortez agreed to drive appellant. Cortez testified that they argued on the way and appellant told her, "I have a pistol." Cortez pulled over by a hospital and ran away from the car, leaving the children with appellant. She called 911.

2

Appellant and the children got out of the car and walked over to a nearby apartment complex. Appellant also called 911. When police arrived, they spoke to the children, and the children told them appellant had delivered the gun to a resident of one of the apartments. Police made contact with the resident, Barbara Washington. Washington confirmed that appellant had asked her to hold the gun for him. She explained that when appellant left the gun with her, he said he was going to return for the gun after he "walk[ed] the kids."

Appellant was indicted for Unlawful Possession of a Firearm by a Felon in March 2016. Trial commenced in January 2017. At the end of voir dire, the prosecutor and appellant's trial counsel struck members from the jury panel through peremptory strikes and challenges for cause. Appellant's trial counsel asserted a *Batson* challenge with respect to an African American juror struck by the prosecutor. The trial court overruled the *Batson* challenge, and the case proceeded to trial.

The jury found appellant guilty. During the punishment phase of trial, the jury found two enhancements true and sentenced appellant to 40 years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Appellant did not file a motion for new trial.

Appellant timely appealed.

## II.   ANALYSIS

### A.   *Batson* challenge

In his first issue, appellant argues that the trial court erred by denying his *Batson* challenge. Appellant argues that the State struck venire member no. 4 based on her race.

A prosecutor cannot use a peremptory strike against a venire member solely on account of race. *Batson v. Kentucky*, 476 U.S. 79, 89 (1986); *see* Tex. Code Crim.

3

Proc. Ann. art. 35.261(a) (West 2018). In the face of perceived purposeful discrimination, an accused may assert a *Batson* challenge. *See* Tex. Code Crim. Proc. Ann. art. 35.261(a).

On appeal, we afford great deference to the trial court's ruling on a *Batson* challenge. *Jasper v. State*, 61 S.W.3d 413, 421–22 (Tex. Crim. App. 2001). We review the voir dire record in the light most favorable to the trial court's ruling and reverse only when the ruling is clearly erroneous. *Young v. State*, 283 S.W.3d 854, 866 (Tex. Crim. App. 2009).

Generally, a *Batson* challenge gives rise to a three-step process: (1) the defendant must make a prima facie case that a venire member was peremptorily excluded based on race; (2) then the State must proffer race-neutral reasons for the peremptory strike; and (3) finally, the defendant has the opportunity to rebut the State's explanations. *Nieto v. State*, 365 S.W.3d 673, 675–76 (Tex. Crim. App. 2012). "The burden of persuasion remains with the defendant to prove purposeful discrimination." *Id.* at 676; *see Finley v. State*, 529 S.W.3d 198, 205 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Purkett v. Elem*, 514 U.S. 765, 768 (1995); *see Jones v. State*, 531 S.W.3d 309, 319 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (citing *Purkett*, 514 U.S. at 768). "[A]bsent some other evidence which rebuts the State's race-neutral explanation, we will not disturb the trial court's finding that the State's explanation is legitimate." *Chambers v. State*, 866 S.W.2d 9, 25 (Tex. Crim. App. 1993); *see Nieto*, 365 S.W.3d at 680 ("The State's description . . . is considered proved . . . because Appellant's counsel did not rebut the observation."); *Mathis v. State*, 67 S.W.3d 918, 924–25 (Tex. Crim. App. 2002) (citing *Chambers*, 866 S.W.2d at 25).

During voir dire in this case, the prosecutor asked venire member no. 4 about

the meaning of possession in the following exchange:

Q. [by prosecutor] Ms. Burnett [venire member #4], do you believe that [two] people can be in possession of something at the same time?

A. [by venire member #4] No.

Q. Let me give you an example. If you loan me something, if you loan me a gun and you say you can use this for the weekend but I want it back, would you say that you're in control and management of the gun in that you can dictate the terms of my use and when I have to bring it back?

A. No.

Q. No?

A. No.

Q. The definition legally, doesn't have to be what you personally believe, but legally it's actual care, custody, control or management. Do you disagree with that?

A. I agree with the definition but possession, to me, cannot be in control of 2 people.

Q. Okay. So in that example of when you loaned me the gun, who do you think is in possession of it?

A. The person with the gun.

Q. The person who has custody of it?

A. Custody of the gun, yes.

Q. So your definition of possession is custody?

A. Yes.

Q. So it doesn't include management or the ability to dictate its use or control?

A. That's correct. That's what I believe.

Q. So as I tell you that that's the legal definition that it includes control or management, could you follow that?

A. Yes. I mean, I would have to -- to me it's just double sided. It's a double-sided sword. That's all I could say.

Q. Can you explain to me what you mean by "double[-]sided sword"?

5

A. Well, I guess my impression of the word possession means the person that has custody of the gun so if the definition includes control or management, I don't agree with that.

Q. Okay.

A. Does that help?

Q. Yes.

A. Thank you.

Q. So you don't agree with it but then if that is the legal definition and Judge instructs you, could you follow that?

Q. Yes.

The State used a peremptory strike to dismiss venire member no. 4 from the jury panel. After voir dire, appellant's trial counsel made a *Batson* challenge to the strike, and the trial court denied appellant's challenge:

The Court: Okay. Any objections to the jury from the state?

Prosecutor: No, Your Honor.

The Court: How about from the defendant?

Appellant's trial counsel: We do have an objection. Judge, we do have an objection, and we would raise a Batson [sic] challenge at this time.

The Court: Which juror?

Appellant's trial counsel: Juror No. 4 from her appearance to be [sic] an African American juror. The defendant in this case is African American. I would like to make an objection that the state put a prima facia case on as to why this particular juror was struck.

Prosecutor: The main reason is when we were discussing possession she didn't agree with the definition of possession, specifically with the type of possession that may be involved in this case.

The Court: Anything else?

Prosecutor: I don't think she said she couldn't follow the law, but she did say she didn't agree with the definition.

The Court: I'm going to overrule your Batson [sic] challenge on 4.

6

Appellant's trial counsel:  That's all we have.

The reason the State proffered in response to appellant's *Batson* challenge did not reflect any inherently discriminatory intent.  The State explained it struck the potential juror because she "didn't agree with the definition of possession." Appellant did not attempt to rebut the State's reasons.  Because discriminatory intent was not inherent in the State's explanation, it must be deemed race-neutral.  *See Purkett*, 514 U.S. at 768; *Jones*, 531 S.W.3d at 319.  Appellant's counsel made no rebuttal; therefore, the State's explanation is considered proved.  *See Nieto*, 365 S.W.3d at 680.  The trial court's finding that the State's explanations were race-neutral is supported by the record and is not clearly erroneous.  Appellant's first issue is overruled.

## B.    Ineffective assistance of counsel

In his second issue, appellant asserts his trial counsel rendered ineffective assistance of counsel that prejudiced his punishment.  Appellant complains his trial counsel failed to investigate or present evidence of appellant's "mental retardation and mental health problems as a mitigating factor for the jury's punishment consideration."  Appellant complains that trial counsel "did not gather and submit Appellant's school and mental health records during the punishment phase of trial." Appellant contends "[t]he presentation of additional supporting school and mental health records *may have* resulted in a number even closer to the legal minimum sentence of 25 years" (emphasis added).

The right to effective assistance of counsel does not entitle a defendant to errorless or perfect representation.  *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006).  To prove ineffective assistance, appellant must show: (1) trial counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms; and (2) there is a reasonable probability the result

of the proceeding would have been different but for trial counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 688–92 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011); *Hernandez v. State*, 988 S.W.2d 770, 772–74 (Tex. Crim. App. 1999) (holding *Strickland* standard applies to punishment phase of non-capital trial). Appellant bears the burden of proving his claims by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). Unless appellant proves both *Strickland* prongs, we must not find counsel's representation to be ineffective. *Lopez*, 343 S.W.3d at 142.

To determine whether counsel's performance was objectively deficient under the first prong, appellant must identify acts or omissions of counsel that allegedly were not the result of reasonable judgment. *Hernandez v. State*, 726 S.W.2d 53, 55–57 (Tex. Crim. App. 1986) (quoting *Strickland*, 466 U.S. at 690). Appellant must overcome the presumption that trial counsel's actions fell within the wide range of reasonable and professional assistance. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). For an appellate court to find counsel ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record and the court must not engage in retrospective speculation. *Lopez*, 343 S.W.3d at 142.

To establish prejudice to punishment under the second prong, an appellant must show a reasonable probability that, but for trial counsel's deficiency at the punishment phase, the punishment fact-finder would have reached a more favorable verdict. *Ex parte Rogers*, 369 S.W.3d 858, 863 (Tex. Crim. App. 2012). It is not enough to satisfy this standard if the likelihood that the punishment fact-finder would have reached a more favorable verdict is merely "conceivable," based upon conjecture or speculation. *Id.*; *Ex parte Cash*, 178 S.W.3d 816, 818–19 (Tex. Crim. App. 2005) (citing *Strickland*, 466 U.S. at 693).

In *Wiggins v. Smith*, the Supreme Court examined an attorney's duty to

8

investigate under its two-prong *Strickland* standard. 539 U.S. 510, 521–23 (2003). The Court concluded that there is a duty to make reasonable investigations, and "'a particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgment.'" *Id.* at 521–22 (quoting *Strickland*, 466 U.S. at 690–91); *see also Ex parte Martinez*, 195 S.W.3d 713, 721–72 (Tex. Crim. App. 2006). Counsel is not required to "investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing"; however, counsel's representation will be considered deficient if a sufficient pre-trial investigation is not performed. *Wiggins*, 539 U.S. at 533.

During the punishment phase of trial, appellant and his sister testified to issues with appellant's schooling: he was in special education classes, he dropped out of school at age 13, he did not learn to read and write in school. Appellant and his sister also speculated concerning appellant's possible mental health issues. Appellant's sister testified:

> To this day he don't really know how to read. And I think his mind, like the focus is not there part of the time. And he's not able to let's say concentrate or do what he needs to do as far as a full body function in my opinion.
>
> . . .
>
> I really think at this point my brother needs help. He needs mental help because he's not thinking straight with his mind psychologically.
>
> . . .
>
> Then also sometimes he hallucinates and he thinks that the world is out to get him. . . . And so I just—I think it's him being in and out, which you guys know, in and out of prison, in and out of jail throughout his whole life. I don't know what goes on behind the closed prison or jail cell. I think that everything is playing with his mind. His mind is not there sometimes. His mind is not there at all.

9

Appellant testified:

> My mom had always played with me like, "Boy, you need to see a psychiatrist." You know what I'm saying? But she knew nothing. I don't know if she actually did know something was wrong with me or whether I stood out differently from people. But she felt like special education might would have helped me at that time. But it didn't. Like I said, the other kids that was in class with me, they was really special ed. They couldn't read, write, didn't know how to function right. But I was in class with them. And I was helping the teachers help them. I never was afforded an education as far as like the other kids was.

When appellant's counsel asked him if he could benefit from seeing a psychiatrist, appellant responded, "It might be. But for the most part I feel like it starts with me, you know what I'm saying? I believe I could change a lot. I have done changed a lot without any help. But I do . . . believe that might be an answer too."

Appellants are often unable to prove ineffective assistance of counsel on direct appeal because the record is undeveloped. *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007). There is no evidence in the record that trial counsel had a duty to investigate or failed to investigate appellant's schooling or mental health issues. Without citation to the record, appellant argues that "[t]he clerk's record reflects that" trial counsel never filed "any motion for a competency examination or even a psychological evaluation." However, nothing in the record, aside from speculation by appellant and his sister at trial, suggested there was any reason to file a motion for competency examination or a psychological evaluation. The extent and depth of trial counsel's investigation into appellant's schooling or mental health issues is not clear from the record. As appellant states, "A general release from defendant, as well as a HIPPA release, would have been all that should have been required to obtain the release of school and mental health records." Appellant argues that his trial counsel "did not gather . . . Appellant's school and mental health records," but there is no affirmative evidence in the record that trial counsel failed to do so.

10

Ordinarily, counsel must be afforded an opportunity to explain his actions before being condemned as unprofessional and incompetent. *Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002). In this case, not only was trial counsel not afforded an opportunity to explain his actions, the record contains no affirmative evidence concerning what trial counsel's actions were.

A claim of ineffective assistance of counsel must be firmly supported by the record. *Id.* at 835. Assuming documents or records existed, there is no evidence in the record that appellant's trial counsel was unaware of the existence of those records or failed to obtain them. We will not assume that counsel did not investigate a defense when the record is silent as to the depth of counsel's investigation. *See Hernandez*, 726 S.W.2d at 57. Without any affirmative evidence that appellant's counsel failed to investigate, we cannot assume trial counsel made no investigation. *Brown v. State*, 129 S.W.3d 762, 767 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

Likewise, if trial counsel decided not to present evidence of appellant's mental health and schooling, we cannot assume counsel did not use sound trial strategy in doing so because the record does not show whether counsel intentionally declined to present such evidence. *See Bone*, 77 S.W.3d at 834 n. 21 ("Neither the court of appeals nor this Court has any idea whether such evidence existed, whether it would be favorable, or whether counsel intentionally declined to" present it.) We may not assume a lack of sound trial strategy where the record is silent regarding trial counsel's strategy. *See id.* at 836 ("A vague, inarticulate sense that counsel could have provided a better defense is not a legal basis for finding counsel constitutionally incompetent . . . . [A] defendant must prove, by a preponderance of the evidence, that there is, in fact, no plausible professional reason for a specific act or omission."). Accordingly, appellant has failed to satisfy the first prong of *Strickland*.

Appellant has also failed to satisfy the second prong of the *Strickland* test—

prejudice.  To obtain a reversal, appellant must show a reasonable probability that, but for trial counsel's deficiency at the punishment phase, the punishment fact-finder would have reached a more favorable verdict.  *Ex parte Rogers*, 369 S.W.3d at 863. Appellant has not made this showing.

Appellant contends "[t]he presentation of additional supporting school and mental health records *may have* resulted in a number even closer to the legal minimum sentence of 25 years" (emphasis added).  Appellant also argues that he needed a psychological expert witness to testify as to how his own mental health issues affected him.  These claims are based on speculation.  Other than the testimony of appellant and his sister, no evidence in the record demonstrates that appellant had mental health issues.  There is no evidence in the record identifying any mental health condition appellant may have.  The record does not reflect what appellant's school or mental health records would have shown.  The record does not reflect what a competency evaluation or a psychological evaluation would have shown.  The record does not reflect what a psychological expert witness would have said about how appellant's mental health issues, if any, affected him.  The cases appellant cites in arguing that he has met the *Strickland* test are inapposite here where the record is so limited.[2]  Given this lack of evidence in the record, appellant has not demonstrated that his punishment would have been different if trial counsel had investigated and presented evidence concerning his schooling and mental health.

---

[2] Appellant cites *Lampkin v. State*, 470 S.W.3d 876 (Tex. App.—Texarkana 2015, pet. ref'd), and *Freeman v. State*, 167 S.W.3d 114 (Tex. App.—Waco 2015, no pet.).  Unlike here, the actions of trial counsel in those cases were known, counsel was provided an opportunity to explain those actions, and there was evidence of appellant's mental history and how the potential mitigating evidence would have changed the outcome of his trial.  *Lampkin*, 470 S.W.3d at 904, 918, 922–24; *Freeman*, 167 S.W.3d at 118–21.  Moreover, as opinions of our sister courts, *Lampkin* and *Freeman* are not controlling authority.  *See Foreman v. State*, —S.W.3d—, 2018 WL 4183716, *16 n.14 (Tex. App.—Houston [14th Dist.] 2018, pet. filed).  We do not adopt the tests articulated in *Lampkin* or *Freeman* here.

We overrule appellant's second issue.

### III.    CONCLUSION

We affirm the judgment of the trial court.


/s/      Marc W. Brown
         Justice


Panel consists of Justices Busby, Brown, and Jewell.
Do Not Publish — TEX. R. APP. P. 47.2(b).