

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00436-CR

_____

GINO RODRIGUEZ, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 372nd District Court
Tarrant County, Texas
Trial Court No. 1515440D

---

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

## I. Introduction

A jury convicted Appellant of the second-degree felony of possession of a controlled substance, cocaine, in an amount of more than four but less than 200 grams. Appellant pleaded true to a repeat-offender notice, and the trial court sentenced him to ten years in the Institutional Division of the Texas Department of Criminal Justice.

Appellant raises three issues on appeal, which we overrule for the following reasons:

- In his first issue, Appellant argues that the trial court should have suppressed the results of a warrantless search of a plastic Whataburger bag that contained drugs. We hold that two rationales permitted the officer to search the bag without a warrant and justified the trial court's decision to overrule Appellant's motion to suppress.

- In his second issue, Appellant argues that the evidence is insufficient to support a finding that he knowingly possessed controlled substances. We hold that the record establishes a number of links that support the reasonable inference that Appellant knowingly possessed the controlled substances.

- In his third issue, Appellant argues that the trial court erred by failing to give the jury a spoliation instruction because the arresting officer failed to preserve the plastic Whataburger bag, as well as the paper Whataburger sack and a ketchup container in which cocaine was found. We hold that Appellant did not preserve any right to relief because he failed to request a spoliation instruction. Further, no instruction was warranted because the record does not support a conclusion that the officer acted in bad faith by not preserving the complained-of items.

Accordingly, we affirm the trial court's judgment.

## II. Factual and procedural background

The central player in this appeal is a plastic Whataburger bag, which contained a paper sack with french fries and a container of ketchup.[1]

At 2:00 in the morning, an officer drove past a "game room" known for frequent narcotics activity.[2] As the officer drove past, a car was exiting the parking lot of the game room but reversed course and pulled back into a parking spot.

This behavior piqued the officer's suspicion. The officer drove a short distance down the street, parked, and turned off his headlights. A short time later, the same

---

[1]For ease of reference and because it does not alter our analysis, we refer to the Whataburger bag rather than each of its individual components.

[2]We refer to this officer as the arresting officer at various places in this opinion.

vehicle that he had seen at the game room drove past his hiding place. The officer followed.

The car's driver committed three traffic violations, which gave the officer probable cause to stop the vehicle. The officer did so.

The officer described the driver as extremely nervous. Appellant, sitting in the front passenger seat, also acted strangely. Throughout most of the officer's interaction with the driver, Appellant ate french fries from a Whataburger bag. According to the officer, most passengers make eye contact with the officer and do not continue eating. The bag containing the fries was on the passenger-side floorboard between Appellant's feet.

The officer had the driver get out of the car. The driver consented to a search of the vehicle. Appellant was also removed.

The officer began his search on the passenger side of the vehicle because Appellant's behavior made him think that he was attempting to conceal something. In the space between the passenger seat where Appellant had been sitting and the car's console, the officer found a green "deal baggie."[3]

The officer then turned his attention to the glove compartment and the Whataburger bag. He described the Whataburger bag as a large plastic bag used to hold multiple orders and stated that the bag contained a paper sack. The paper sack

---

[3]In the officer's experience, the bag he found was "commonly used in narcotic sales," which is why it was referred to as a "deal baggie."

contained french fries, though he could not remember if it also contained a hamburger. The officer vividly recalled that the inside of the paper sack was coated in ketchup.

Digging through the paper sack produced a plastic Whataburger ketchup container. The officer could not remember whether the foil lid of the container was totally or partially removed. But pushed into the container was a non-Ziplock sandwich bag that contained what the officer believed was cocaine. In the officer's opinion, the cocaine was placed in the ketchup container in an effort to hide it.

Loose in the paper sack were two other baggies containing what the officer believed was methamphetamine. These baggies were free of ketchup.

The paper sack also contained loose french fries. The officer could not remember how many french fries were loose in the paper sack nor how much the paper sack weighed.

Neither the arresting officer nor a backup officer who arrived shortly after the stop saw ketchup on Appellant's hands after he was removed from the car. But before Appellant had been asked to step from the car, the backup officer had observed Appellant using a wad of napkins to wipe his hands.

The driver had a suspended license, and the officer could not remember if the driver had produced proof of insurance. The driver denied knowledge of the drugs and was released. Appellant, however, was arrested.

During the trial, Appellant emphasized that the arresting officer had not collected and preserved various items from the search and that he had cleaned ketchup off the baggie found in the ketchup container. The officer testified that this was his "first instance with something like that"—a drug baggie covered with ketchup. He did not consider calling the crime scene unit to the scene to preserve evidence. He decided that the plastic Whataburger bag, the paper sack with the french fries, and the ketchup container did not have any evidentiary value. In the officer's words, the Whataburger bag was "gross," and he did not see the need to preserve it. He also did not collect and preserve the deal baggie that he found between the console and the passenger seat.

A forensic scientist employed by the Texas Department of Public Safety testified that the substance contained in the baggie that had been pushed into the ketchup container was cocaine. The recovered cocaine weighed 6.20 grams. The recovered substance believed to be methamphetamine was not tested because the lab's policy is to test only "the highest penalty substance that's submitted to the laboratory."

Based on this evidence, Appellant was found guilty of possession of a controlled substance and was sentenced to ten years' incarceration. He appeals.

### III. The arresting officer did not have to obtain a warrant before he examined the contents of the Whataburger bag.

Appellant challenges the search of the Whataburger bag that contained controlled substances and analogizes his expectation of privacy in the bag to that of a cell phone found in a car. But he does not challenge the two steps in the process that brought the officer to the search of the Whataburger bag: the initial stop of the car and the driver's consent, which permitted the officer to enter the car's passenger cabin. The record supports two rationales that permitted the officer to search the Whataburger bag. First, the driver's consent permitted a search of the bag. Second, the officer's initial discovery of contraband in the vehicle permitted him to search further in other containers found in the passenger compartment, such as the Whataburger bag.

#### A. Standard of review

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the witnesses' credibility and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). Therefore, we defer almost totally to the

7

trial court's rulings on (1) questions of historical fact, even if the trial court determined those facts on a basis other than evaluating credibility and demeanor, and (2) application-of-law-to-fact questions that turn on evaluating credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the witnesses' credibility and demeanor, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede*, 214 S.W.3d at 25. We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *State v. Kelly*, 204 S.W.3d 808, 819 (Tex. Crim. App. 2006).

## B. When a warrantless search is permissible

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at 24. A

defendant seeking to suppress evidence on Fourth Amendment grounds bears the initial burden to produce some evidence that the government conducted a warrantless search or seizure that he has standing to contest.[4] *State v. Martinez*, 569 S.W.3d 621, 623–24 (Tex. Crim. App. 2019) (quoting *Russell v. State*, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986), *disavowed in part on other grounds by Handy v. State*, 189 S.W.3d 296, 299 n.2 (Tex. Crim. App. 2006)); *Handy*, 189 S.W.3d at 298–99; *see, e.g.*, *Rawlings v. Kentucky*, 448 U.S. 98, 104–05, 100 S. Ct. 2556, 2561 (1980). Once the defendant does so, the burden shifts to the State to prove either that the search or seizure was conducted pursuant to a warrant or, if warrantless, was otherwise reasonable. *Martinez*, 569 S.W.3d at 623–24 (quoting *Russell*, 717 S.W.2d at 9); *Amador*, 221 S.W.3d at 672–73.

Whether a search is reasonable is a question of law that we review de novo, measuring reasonableness by examining the totality of the circumstances. *Kothe v. State*, 152 S.W.3d 54, 62–63 (Tex. Crim. App. 2004). In the process, we must balance the public interest and the individual's right to be free from arbitrary detentions and intrusions. *Id.* at 63. A warrantless search is per se unreasonable unless it falls within one of the "specifically defined and well established" exceptions to the warrant requirement. *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003); *see Best*, 118 S.W.3d at 862.

---

[4]The State concedes that Appellant has standing to challenge the search of the Whataburger bag.

9

## C. Appellant's contentions

During the trial, Appellant targeted his objection to the officer's search of the

Whataburger bag:

> [DEFENSE COUNSEL]: Your Honor, at this point I'm going to object on the basis that Mr. Rodriguez has a privacy interest as a passenger in the vehicle and items around him and for that reason, we object on the grounds of Article [I], Section 9, Fourth Amendment to the U.S. Constitution.[5]
>
> THE COURT: So you're saying that the control interest of the driver of the car doesn't give him permission to consent to the search of items in the car?
>
> [DEFENSE COUNSEL]: Yes.
>
> THE COURT: Specifically the Whataburger bag. All right. That's noted. That objection is considered and overruled. Would you like it to be running?
>
> Do you want it running?
>
> [DEFENSE COUNSEL]: Yes, please.
>
> THE COURT: It will be running.
>
> [DEFENSE COUNSEL]: Yes.

_____

[5]This objection came after the trial court had conducted a hearing on the validity of the initial stop outside the presence of the jury. At the conclusion of the hearing, the trial court stated, "Your objection is running to any reference of anything observed or anything your client said or anything that was seized from the vehicle . . . until he was booked into jail." Additional testimony was then introduced in the presence of the jury, and the trial court heard the Fourth Amendment objection quoted above in the body of the opinion. We will consider the evidence adduced before the Fourth Amendment objection because the parties made no objection to this procedure. *See Kearney v. State*, 181 S.W.3d 438, 446 (Tex. App.—Waco 2005, pet. ref'd) (considering evidence adduced after hearing on motion to suppress).

THE COURT:  All right.

The trial court made no findings regarding Appellant's attempt at suppression.

Appellant carries this theme forward to his brief and does not challenge the driver's right to consent to a search of the car but focuses on the search of the Whataburger bag:

> The humble paper sack or plastic bag, as effectively as the powerful smart phone, can contain the personal effects, papers, and information protected from the government's prying eyes by our two constitutions.
>
> Because appellant was subjected to a warrantless search of the container which violated his privacy interest, the objection to the evidence should have been sustained, and therefore this case should be reversed.

**D.  Why a warrantless search was permissible in this case**

Two rationales permitted the arresting officer to make a warrantless search of the Whataburger bag.[6]

---

[6]Appellant cites to no binding authority holding that the standards applied under Article I, Section 9 of the Texas constitution are higher than those of the Fourth Amendment.  The one case he cites to suggest a higher standard is *Autran v. State*, 887 S.W.2d 31 (Tex. Crim. App. 1994), with its holding that the Texas constitution prohibits opening closed containers as part of an inventory search. *Autran*'s holding has no application to this case.  Further, *Autran* has been frequently criticized, has never been followed, and is not considered binding precedent. *See Perkins v. State*, No. 09-16-00003-CR, 2017 WL 129924, at *5 (Tex. App.—Beaumont Jan. 11, 2017, pet. ref'd) (mem. op., not designated for publication) (discussing the holdings criticizing *Autran* and its lack of binding effect).

### 1. The driver gave the arresting officer consent to search the car without a warrant.

As a general proposition, "[c]onsent to search is one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause." *Rogmad v. State*, No. 02-14-00075-CR, 2015 WL 2341345, at *2 (Tex. App.—Fort Worth Nov. 4, 2015, pet. ref'd) (mem. op., not designated for publication) (citing *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000)). The court of criminal appeals has stated the parameters for determining the scope of consent as follows:

> The Supreme Court has explained, and we have held, that "the standard for measuring the scope of consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Of course, a person is free to limit the scope of the consent that he gives, but a person's silence in the face of an officer's further actions may imply consent to that further action. Furthermore, "[i]f the consent to search is entirely open-ended, a reasonable person would have no cause to believe that the search will be limited in some way."

*Valtierra v. State*, 310 S.W.3d 442, 448–49 (Tex. Crim. App. 2010) (citations and footnotes omitted).

Here, there is no testimony about the exchange that resulted in the driver's consent to search the car. By the same token, there is no testimony of any restriction that the driver placed on the search.[7]

---

[7]Appellant does not challenge the driver's authority to consent to the search, and though the driver apparently did not own the vehicle, his common authority over it provided the authority needed to consent to the search. *See Norton v. State*, No. 02-14-00074-CR, 2015 WL 4966998, at *5 (Tex. App.—Fort Worth Aug. 20, 2015, no

Without elaborating on the exchange that resulted in the consent, we assume only that the officer asked to search the vehicle and that the driver assented. In that situation, a reasonable person would understand that the officer might look in an open fast-food bag sitting in the floorboard of the car. For example, the United States Supreme Court examined the scope of consent to search when the officer told a driver that he suspected that the driver was carrying narcotics and the driver gave the officer permission to search without any restrictions on the scope of the search. *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S. Ct. 1801, 1804 (1991). *Jimeno* held that

> it was objectively reasonable for the police to conclude that the general consent to search respondent's car included consent to search containers within that car which might bear drugs. A reasonable person may be expected to know that narcotics are generally carried in some form of a container. "Contraband goods rarely are strewn across the trunk or floor of a car."

*Id.*, 111 S. Ct. at 1804. The scope of the consent in *Jimeno* permitted the officer to search a paper bag lying on the floor of the car. *Id.*, 111 S. Ct. at 1804; *see also Vargas v. State*, 18 S.W.3d 247, 254 (Tex. App.—Waco 2000, pet. ref'd) (holding that consent to search permitted officer to look in terry cloth bag that held an open gold pillow that contained three packages of cocaine).

Though our record does not indicate that the officer told the driver that he believed the car contained drugs, an objectively reasonable person would expect that

---

pet.) (mem. op., not designated for publication) (citing *Maxwell v. State*, 73 S.W.3d 278, 281–82 (Tex. Crim. App. 2002)).

13

an officer who had permission to look through a car interior would look through an open fast-food bag that was in the immediate control of one of the occupants.

In addition, dash camera videos from the officers' cars showed that the driver was facing his car when the arresting officer entered its passenger side. The officer emerged from the vehicle with the Whataburger bag, placed it on the trunk of the car, and then examined its contents. The driver raised no protest to the officer's actions. This constituted implied consent to search the bag.

### 2. The automobile exception permitted the arresting officer to inspect the contents of the Whataburger bag without a warrant.

The second rationale that supports the officer's search of the Whataburger bag involves a variation on what is commonly known as the automobile exception to the warrant requirement. It is an

> exception [that] holds that the police may lawfully search an automobile if they have probable cause to believe that the vehicle contains evidence of a crime. Probable cause to search exists when there is a "fair probability" of finding inculpatory evidence at the location being searched. If this exception applies, then the police may search "every part of the vehicle and its contents that may conceal the object of the search."

*Neal v. State*, 256 S.W.3d 264, 282 (Tex. Crim. App. 2008) (citations omitted) (citing *Wiede*, 214 S.W.3d at 24). As this court recently held, "police officers with probable cause to search a car for evidence of a crime may inspect passengers' belongings found in the car that are capable of concealing the object of a search." *Ross v. State*, No. 02-18-00461-CR, 2019 WL 2635570, at *4 (Tex. App.—Fort Worth June 27,

14

2019, no pet.) (mem. op., not designated for publication) (citing *Wyoming v. Houghton*, 526 U.S. 295, 307, 119 S. Ct. 1297, 1304 (1999)).

This appeal presents a variation of the automobile exception because the facts obviated the need to consider two of the steps usually associated with the automobile exception—the initial stop of the automobile and the need for probable cause to begin the search by entering the vehicle's interior. There is no challenge to the initial stop, and the driver's consent allowed the officer to enter the car's interior.

In this case, once the officer was inside the car, he found what he identified as packaging for illegal narcotics between the seat in which Appellant was sitting and the center console.

Appellant does not challenge the propriety of the search that resulted in this discovery of the deal baggie or that it provided probable cause to search further.[8] Upon finding that container, the officer had probable cause, which triggered his ability to search other containers in the car. *See Ross*, 2019 WL 2635570, at *4 (holding that after being given consent to search car's interior, "[o]nce Officer Callaway found the third-party's driver's license, she had probable cause to search the other containers inside the car for similar contraband"); *see also Houghton*, 526 U.S. at 302, 119 S. Ct. at 1301 ("A passenger's personal belongings, just like the driver's belongings or

---

[8]*See, e.g.*, *Wiede*, 214 S.W.3d at 27 (citing *Davis v. State*, 202 S.W.3d 149, 156–57 (Tex. Crim. App. 2006), and noting that officer's "specific knowledge that drugs are commonly packaged, carried, or transported in plastic bags" is evidence of reasonableness for purposes of probable-cause determination).

containers attached to the car like a glove compartment, are 'in' the car, and the officer has probable cause to search for contraband *in* the car" and subject to search); *Schenk v. State*, No. 05-14-00207-CR, 2015 WL 1243401, at *7 (Tex. App.—Dallas Mar. 16, 2015, pet. ref'd) (mem. op., not designated for publication) ("The glaring omission from the facts of *Stokvis* [*v. State*, 147 S.W.3d 669 (Tex. App.—Amarillo 2004, pet. ref'd),] is the presence of drugs or other contraband found inside the vehicle providing probable cause to search other items inside the car."); *see also Dahlem v. State*, 322 S.W.3d 685, 689 (Tex. App.—Fort Worth 2010, pet. ref'd) (reciting that probable cause to search exists when reasonably trustworthy facts and circumstances within the officer's knowledge would lead persons of reasonable prudence to believe that an instrumentality of a crime or evidence pertaining to a crime will be found and that if probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search).

## E. Disposition of Appellant's first issue

After giving due deference to the trial court's determination of the historical facts and reviewing de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor, we conclude that, given the totality of the circumstances, the State carried its burden to establish that the search was reasonable. The arresting officer did not need a warrant to examine the contents of the Whataburger bag. We overrule Appellant's first issue.

16

## IV. Appellant's argument—that there is insufficient evidence that he "possessed" a controlled substance—fails.

### A. The jury could reasonably infer that Appellant was caught "red-handed."

Appellant sat in the car with the Whataburger bag that contained narcotics between his feet. After the officer approached the car and began interacting with the driver, Appellant continued to reach into the bag and eat french fries from it. A Whataburger ketchup container was open and had a baggie of cocaine crammed into it in what appeared to be an effort to hide the drugs. The inside of the paper sack containing the french fries was doused with ketchup to such an extent that the arresting officer complained about how his hands were coated in the substance after his search of the Whataburger bag. He viewed the use of the ketchup as an attempt to conceal the drugs. No one other than Appellant was observed with a hand in the Whataburger bag. The backup officer who watched Appellant before he was removed from the car observed him wiping his hands on napkins.

In the face of this evidence, Appellant's brief abstractly discusses the legal principles that govern what proof is sufficient to establish possession and ends with limited argument:

> Here, the contraband was found inside a Whataburger bag from which appellant was seen eating fries by Officer Barton. Because there was no evidence that appellant had ever touched the contraband or the ketchup container in which it was found, or that he knew it was in the bag, the evidence is insufficient to prove that he knowingly possessed the controlled substance.

17

This argument ignores the reasonable inference of possession apparent from these facts: Appellant was eating food from a bag that contained the controlled substance; the inside of the bag was coated with ketchup, which the officer viewed as an attempt to conceal the cocaine; and Appellant was seen wiping his hands after he removed them from the bag.

## B. The general standard of review

Federal due process requires that the State prove beyond a reasonable doubt every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 2787 (1979); *see* U.S. Const. amend. XIV. In our due-process-evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

## C. The standards for resolving a sufficiency challenge on the issue of whether a defendant was in possession of a controlled substance

Here, Appellant was charged with and convicted of possession of a controlled substance—cocaine. Section 481.115 of the Texas Health and Safety Code states that "a person commits an offense if the person knowingly or intentionally possesses a controlled substance listed in Penalty Group 1" and that "[a]n offense . . . is a felony of the second degree if the amount of the controlled substance possessed is, by

18

aggregate weight, including adulterants or dilutants, four grams or more but less than 200 grams." Tex. Health & Safety Code Ann. § 481.115(a), (d).

The focus of Appellant's sufficiency challenge is whether he possessed the cocaine. Both the Texas Health and Safety Code and the Texas Penal Code provide the same definition for "possession": "actual care, custody, control, or management." *See id.* § 481.002(38); Tex. Penal Code Ann. § 1.07(a)(39). Thus, "[t]o prove unlawful possession of a controlled substance, the State must prove that[] (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband." *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005), *overruled in part on other grounds by Robinson v. State*, 466 S.W.3d 166, 173 & n.32 (Tex. Crim. App. 2015). Appellant does not contend that the evidence is insufficient to prove that he knew the substance was contraband; he limits his attack to the sufficiency of the evidence establishing his control and management of the substance because, in his view, the evidence does not establish the link between him and the controlled substance—the cocaine found in a baggie that was crammed in the ketchup container—that is necessary to prove possession.

A person's "fortuitous proximity" to drugs is not sufficient to establish possession; there must be an affirmative link between the defendant and the substance to establish possession:

> The "affirmative links rule" is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs. This rule simply restates the common-sense

19

notion that a person—such as a father, son, spouse, roommate, or friend—may jointly possess property like a house but not necessarily jointly possess the contraband found in that house. Thus, we have formulated the rule that "[w]hen the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances [that] affirmatively link the accused to the contraband."

*Id.* at 406 (citations omitted).

As with any other element of an offense, the affirmative link may be established by direct or circumstantial evidence. *See Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006) ("However, presence or proximity, when combined with other evidence, either direct or circumstantial (e.g., 'links'), may well be sufficient to establish that element beyond a reasonable doubt.").

The courts have formulated a nonexclusive list of factors to examine in determining whether the necessary links exist:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Tate v. State*, 500 S.W.3d 410, 414 (Tex. Crim. App. 2016) (quoting *Evans*, 202 S.W.3d at 162 n.12).

But as the court of criminal appeals notes, "[a]lthough these factors can help guide a court's analysis, ultimately the inquiry remains that set forth in *Jackson*: Based on the combined and cumulative force of the evidence and any reasonable inferences therefrom, was a jury rationally justified in finding guilt beyond a reasonable doubt?" *Id.* (citing *Jackson*, 443 U.S. at 318–19, 99 S. Ct. at 2789). When analyzing the sufficiency of the evidence supporting the element of possession, we cannot focus our analysis on "each circumstance of guilt in isolation without considering the cumulative force of all of the evidence." *Id.* at 417. Our review based on this cumulative view of the evidence requires that "the logical force of all of the admitted evidence must be considered in the light most favorable to the conviction, meaning that all reasonable inferences from the evidence must be resolved in favor of the jury's guilty verdict." *Id.*

### D. The record contains evidence from which the jury could draw a reasonable inference that Appellant was in possession of the controlled substance found in the car.

A definite link between Appellant and the controlled substance is that he had his hand in the bag containing it shortly before it was discovered, and no other person had access to the bag between the time that his hand was observed in the bag and the discovery of the cocaine. If this were not enough to establish a reasonable inference of possession, Appellant's behavior compounds the reasonable inference that he was

attempting to conceal cocaine in the bag. The unusual behavior of continuing to eat fries out of a fast-food bag during a traffic stop prompted the thought that Appellant was hoping to demonstrate to the officer that the bag held innocent items. Beyond this, a jury could reasonably infer that the person who tried to conceal cocaine in the paper sack also left it in a "gross" condition by coating its interior with ketchup in an effort to deter its thorough examination. It is a reasonable inference that the person who most recently had his hand in the bag was the one who had tried to camouflage the cocaine's presence. And finally there is a link between the condition of the interior of the bag and Appellant's behavior: he was seen wiping his hands shortly before the officer removed him the seat where he sat with the Whataburger bag between his feet.

Accordingly, we overrule Appellant's second issue.

## V. The trial court did not err by failing to include a spoliation instruction.

Appellant's argument turns on the failure of the arresting officer to preserve the Whataburger bag, including the paper sack with the french fries and the ketchup container, as evidence. Appellant contends that this act should have prompted the trial court to instruct the jury on the spoliation of evidence. We cannot fault the trial court for not giving an instruction that Appellant did not request. Further, the officer testified that he believed that the complained-of items held no evidentiary value; nothing contradicts this explanation or raises the specter that the officer made his

22

decision in bad faith. Thus, the record does not support Appellant's right to a spoliation instruction even if one had been requested.

## A. Standard of review

Unless a particular statute imposes a duty on the trial court to give an instruction, the trial court generally need not instruct the jury sua sponte on unrequested traditional defenses and defensive issues because they are not "law applicable to the case." *See* Tex. Code Crim. Proc. Ann. art. 36.14; Tex. R. App. P. 33.1; *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013); *see also Oursbourn v. State*, 259 S.W.3d 159, 180 (Tex. Crim. App. 2008). A defendant who fails to ask for an instruction on such issues, or to object to their exclusion, forfeits the alleged error on appeal; thus, we do not engage in an *Almanza* egregious-harm review. *See* Tex. R. App. P. 33.1; *Vega*, 394 S.W.3d at 519; *see also Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998); *Almanza v. State*, 686 S.W.2d 157, 171–74 (Tex. Crim. App. 1985) (op. on reh'g). Only when a rule or a statute requires an instruction under the particular circumstances of the case, that instruction is "the law applicable to the case," and we review its unobjected-to omission from the charge for egregious harm under *Almanza*. *Oursbourn*, 259 S.W.3d at 180.

## B. To establish a due-process violation resulting from law enforcement's failure to preserve evidence, an appellant must establish that law enforcement acted in bad faith.

The due-process clause of the United States Constitution provides a limited protection to criminal defendants when authorities fail to preserve potentially useful

evidence in a criminal prosecution. *Arizona v. Youngblood*, 488 U.S. 51, 57–58, 109 S. Ct. 333, 337 (1988). The due course of law provision of the Texas constitution provides a protection that parallels that of the federal constitution. *Strutz v. State*, No. 03-16-00666-CR, 2018 WL 1937382, at *4 (Tex. App.—Austin Apr. 25, 2018, no pet.) (mem. op., not designated for publication) (collecting cases).

The due-process protection for a failure to preserve evidence that could have been subjected to tests, the results of which might have exonerated the defendant, is much more limited than the failure of the prosecution to turn over existing exculpatory evidence. *Ex parte Napper*, 322 S.W.3d 202, 229 (Tex. Crim. App. 2010) (citing *Youngblood*, 488 U.S. at 57, 109 S. Ct. at 337); *see also Moody v. State*, 551 S.W.3d 167, 171 (Tex. App.—Fort Worth 2017, no pet.). The narrower protection results from the "treacherous task" that courts face in "divining the import of materials whose contents are unknown and, very often, disputed." *Napper*, 322 S.W.3d at 229.

In recognition of the difficultly of this task, "when the destruction of potentially useful evidence is at issue, the defendant must show 'bad faith' on the part of the State in destroying the evidence in order to show a violation of due process." *Id.* "This rule confines the police's obligation to preserve evidence 'to that class of cases [in which] the interests of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant.'" *Id.*

24

In the context of an analyst's destruction of evidence, the court of criminal appeals has enunciated a standard of bad faith that goes well beyond a mistake in judgment whether to preserve evidence and instead requires a showing of personal animus or an attempt to thwart a defendant's ability to obtain useful evidence:

> "Bad faith" is more than simply being aware that one's action or inaction could result in the loss of something that is recognized to be evidence. As the cases we have discussed show, bad faith entails some sort of improper motive, such as personal animus against the defendant or a desire to prevent the defendant from obtaining evidence that might be useful. Bad faith cannot be established by showing simply that the analyst destroyed the evidence without thought, or did so because that was the common practice, or did so because the analyst believed unreasonably that he was following the proper procedure.

*Id.* at 238; *see also Chandler v. State*, No. 02-18-00166-CR, 2018 WL 6565812, at *2 (Tex. App.—Fort Worth Dec. 13, 2018, pet. ref'd) (mem. op., not designated for publication) ("[B]ad faith entails some sort of improper motive, such as personal animus against the defendant or a desire to prevent the defendant from obtaining evidence that might be useful." (citing *Napper*, 322 S.W.3d at 229)).

**C. A spoliation instruction is an adverse inference instruction that a defendant must request, or else any claim of error is forfeited.**

Here, Appellant wanted to bring law enforcement's failure to preserve evidence to the jury's attention through a spoliation instruction. "A spoliation instruction is an instruction given to the jury outlining permissible inferences they may make against a party who has lost, altered, or destroyed evidence." *Matlock Place Apartments, L.P. v. Druce,* 369 S.W.3d 355, 379 (Tex. App.—Fort Worth 2012, pet. denied) (citing *Tex.*

25

*Elec. Coop. v. Dillard*, 171 S.W.3d 201, 208 (Tex. App.—Tyler 2005, no pet.); *Brewer v. Dowling*, 862 S.W.2d 156, 159 (Tex. App.—Fort Worth 1993, writ denied); *see also Jones v. State*, 531 S.W.3d 309, 321 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (discussing spoliation instruction in the context of a criminal case); *Snell v. State*, 324 S.W.3d 682, 684 n.1 (Tex. App.—Fort Worth 2010, no pet.) (containing proposed form of spoliation instruction in a criminal case).

In the context of a criminal case, for the reasons we explained in the previous section, a defendant is not entitled to a spoliation instruction absent evidence that law enforcement acted in bad faith. *Chandler*, 2018 WL 6565812, at *2; *see also Moody*, 551 S.W.3d at 172 (holding no error in failing to include spoliation instruction in jury charge because there was no showing of bad faith on the part of the State); *Meza v. State*, No. 02-14-00277-CR, 2015 WL 5770748, at *2 (Tex. App.—Fort Worth Oct. 1, 2015, pet. ref'd) (mem. op., not designated for publication) (same); *Snell*, 324 S.W.3d at 684 (same).

Further, a spoliation instruction is an adverse inference instruction, i.e., the failure to preserve evidence allows the jury to draw an inference that the evidence was helpful to the defendant. *Jones*, 531 S.W.3d at 321; *Yazdi v. State*, No. 03-13-00794-CR, 2016 WL 240925, at *5 (Tex. App.—Austin Jan. 13, 2016, pet. ref'd) (mem. op., not designated for publication) (describing spoliation instruction as "an instruction that [the failure to preserve evidence] gives rise to a presumption that the uncollected evidence would favor the defendant"); *Carroll v. State*, 266 S.W.3d 1, 3 (Tex. App.—

26

Waco 2008, pet. ref'd) ("The remedy for the State's failure to preserve such evidence is an adverse inference instruction."). The trial court has no obligation to submit an adverse inference instruction dealing with the spoliation of evidence absent a request from the defendant. *Cox v. State*, No. 05-11-00687-CR, 2012 WL 2692189, at *6 (Tex. App.—Dallas July 9, 2012, pet. stricken) (not designated for publication) ("A spoliation adverse inference instruction is a defensive issue [that] a trial court has no independent obligation to submit to the jury absent a request by the defendant."); *see Carroll*, 266 S.W.3d at 3–4 (holding that trial court did not err by failing to submit spoliation instruction to the jury when the defendant failed to request the adverse inference instruction); *see also Rivera v. State*, No. 09-16-00065-CR, 2017 WL 4275194, at *1 (Tex. App.—Beaumont, Sept. 17, 2017, no pet.) (mem. op., not designated for publication) (holding that spoliation complaint was waived for various reasons, including that defendant "did not request an adverse inference instruction or any other jury instruction related to the uncollected evidence").

> **D. The trial court did not err by not including a spoliation instruction in the charge. The record contains no evidence that law enforcement acted in bad faith, and Appellant did not request a spoliation instruction.**

Appellant recognizes the rule that a due-process claim based on the failure to preserve evidence must be based on a showing of bad faith. But he then begs the question by arguing that the arresting officer made a misjudgment when he failed to preserve the Whataburger bag, including the paper sack with the french fries and the ketchup container.

The record establishes a straightforward reason why the officer did not collect the complained-of items as evidence—they were coated with ketchup. The arresting officer also testified that he believed that he had collected all the evidence that had any evidentiary value. Misjudgment is not bad faith. *See Napper*, 322 S.W.3d at 238. Further, nothing in this record suggests that the arresting officer harbored the attitudes necessary to sustain a finding of bad faith. The record contains, and Appellant points us to, no evidence that the arresting officer bore a personal animus toward Appellant. Nothing in the record suggests, and Appellant does not point us to any evidence, that the officer's actions were calculated to deprive Appellant of evidence that he might find useful.

And Appellant did not preserve the basis for his claim of error. He did not fulfill his burden to request the submission of a spoliation instruction, nor did he object to the trial court's failure to include such an instruction in the charge. We know of no statute, and Appellant cites us to none, that requires a trial court to give a spoliation instruction sua sponte. Thus, we do not need to conduct a review to determine whether the failure to include the instruction constituted egregious harm.

We therefore overrule Appellant's third issue.

## VI.  Conclusion

Having overruled Appellant's three issues, we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  October 3, 2019