**Opinion filed October 28, 2021**



In The

# Eleventh Court of Appeals

_____

## No. 11-19-00298-CR

_____

**BRUCE PAYNE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 104th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 21827B**

## M E M O R A N D U M   O P I N I O N

The State charged Appellant, Bruce Payne, by indictment with the offense of possession of methamphetamine in an amount of one gram or more but less than four grams. As set forth below, police officers found the methamphetamine in a shoe that Appellant was wearing. Appellant testified that the shoe was not his. Appellant pleaded "true" to two felony convictions alleged for enhancement purposes. The jury convicted Appellant of the charged offense and assessed his

punishment at confinement for thirty years in the Institutional Division of the Texas Department of Criminal Justice.

Appellant presents two issues on appeal. He asserts in his first issue that the trial court erred by denying his motion to suppress evidence and that, due to spoliation of evidence, his federal due process and his Texas "due course of law" rights were violated. In his second issue, Appellant asserts that the trial court erred by denying his requested jury instruction concerning the spoliation of evidence. We affirm.

*Background Facts*

Officer Michael Mason of the Abilene Police Department pulled Appellant over for failing to signal a turn. At the time Officer Mason initiated the traffic stop, the dash camera on his patrol vehicle was already recording from a previous stop. Officer Mason explained that the dash camera and body-worn camera systems are integrated so that when an officer initiates a stop with his vehicle lights activated, the dash camera begins recording, which then automatically turns on the officer's body camera. At the end of his previous stop, Officer Mason turned off his body camera but did not turn off the patrol vehicle's dash camera. As a result of failing to turn off the dash camera after the prior stop, the system did not reset, and Officer Mason's body camera did not begin recording automatically when he initiated the traffic stop of Appellant.

During the stop, Officer Mason asked Appellant for his license and insurance, and he asked the other two passengers for their identification and other information. Appellant could not immediately produce the insurance information, and while he was searching, Officer Mason noticed that the other two passengers were acting nervous: they were smoking cigarettes, making furtive movements, and sweating.

Officer Mason questioned Appellant about where the group was headed. Appellant indicated that they were coming from a McDonald's on the south side of

town and headed to his home, which was also on the south side of town. This raised Officer Mason's suspicions because the stop took place on the north side of town, which would be an indirect route and potentially indicated that Appellant did not disclose the true purpose of the group's trip.

While Appellant was searching for his insurance information, Officer Jerod Daniel arrived on the scene and assisted Officer Mason with the stop. Because Officer Mason believed that there may have been illegal activity, Officer Daniel stayed with the vehicle to watch the passengers and to ensure that none of them drew a weapon or attempted to destroy any narcotics. While Officer Daniel watched the passengers, Officer Mason ran their IDs and the vehicle's license plate in multiple systems. One of the passengers provided a name and date of birth that returned a photograph that did not resemble the passenger. This prompted Officer Mason to further investigate that passenger's correct identity, thereby extending the duration of the stop. Ultimately, the police arrested the passenger for failure to identify as a fugitive. The passenger's failure to identify, combined with the group's nervous behavior, prompted Officer Mason to called for a K-9 unit to do a free-air sniff of the vehicle.

When the K-9 unit arrived, Officer Mason asked Appellant and the passengers to step out of the vehicle. Appellant testified that he informed Officer Daniel that he did not have on shoes because one of his flip-flops was broken. Appellant gave conflicting testimony about whether an officer told him to put on shoes before exiting the vehicle. On direct examination, Appellant testified that Officer Daniel told him that he was "not getting out" of the vehicle without shoes. Then, on cross-examination, Appellant testified that Officer Daniel told him that he "[could] get out with them or just put some on." Officer Daniel testified that he did not ask Appellant to put on shoes. Ultimately, Appellant exited the car wearing a pair of shoes. Appellant testified that they were not his shoes.

Officer Katie Welch and her dog Barco performed a free-air sniff of the vehicle. The dog gave a positive alert for narcotics at the driver's side of the vehicle. After the positive alert, Officer Mason searched the occupants of the vehicle, beginning with Appellant. Officer Mason testified that he asked Appellant to remove his shoes. Officer Mason observed a "Camel Snus" tin in one of the shoes. Officer Mason further testified that Appellant attempted to move the tin back up into the toe area of the shoe in an effort to hide the tin before Officer Mason observed it. The Camel Snus tin contained 1.9 grams of methamphetamine.

At the conclusion of the stop, Officer Daniel categorized his body camera footage as "other than evidence." Officer Daniel testified that the way an officer categorizes the footage determines the length of time that the video files are kept on the department's server. He testified that he categorized the video as "other than evidence" because he did not initiate the stop, perform any searches, or locate contraband. The department saves files in this category for approximately ninety days. He further testified that the backup officer's body camera footage is usually not booked into evidence and that he did not know that Officer Mason's camera was turned off when he categorized his body camera footage as "other than evidence."

Appellant filed a motion to suppress the methamphetamine seized as a result of the search. He asserted in his written motion that there was no probable cause or reasonable suspicion for the traffic stop and that Officer Mason prolonged the traffic stop beyond the time needed to complete the stop. The trial court denied the motion and found that Officer Mason had reasonable suspicion of a traffic violation, that the detention was reasonable, and that probable cause existed to search the vehicle and arrest Appellant.

At trial, Appellant argued that he did not knowingly or intentionally possess methamphetamine because the shoes were not his and because he did not know that the methamphetamine was in the shoe. Appellant argued that the missing body

4

camera footage would have shown that Appellant put the shoes on prior to exiting the vehicle.

Appellant testified that he wears a size 8.5 shoe and that the shoes from the car were too big for him. He estimated that the shoes he put on were size 12 or 13, "maybe a little larger," and that he would not wear a shoe or boot larger than size 9D. He further testified that, when he exited the vehicle wearing the shoes, he stepped on the heels of the shoes like a slip-on shoe rather than inserting his foot properly into the shoe. Appellant testified that, because the shoes were much larger than his foot, and because he did not properly place his foot in the shoe, he did not feel the Camel Snus tin in the toe of the shoe. On rebuttal, Officer Mason testified that the shoes did not look to be a size 12 or 13 and that Appellant was wearing the shoes properly rather than stepping on the heel.

Appellant argued at trial that Officer Mason intentionally turned off his body camera and that Officer Daniel intentionally categorized his camera footage in a way that it could be deleted after ninety days. Based on this theory, Appellant requested the trial court to instruct the jury on spoliation, arguing that the officers acted in bad faith and destroyed the only evidence of whether Appellant put on the shoes just before exiting the vehicle, how he was wearing the shoes, and the size of the shoes. The trial court denied the instruction. This appeal followed.

*Analysis*

In Appellant's first issue, he contends that the trial court erred in denying his motion to suppress the methamphetamine. The written motion and the hearing on the motion to suppress focused only on Officer Mason—alleging that he lacked reasonable suspicion to stop Appellant and that the resulting stop was unduly prolonged.

On appeal, Appellant contends that the trial court erred by denying the motion to suppress based on Officer Daniel's missing body camera footage. Appellant

5

contends that the destruction of the body camera footage violated his due process rights under the U.S. Constitution and his due course of law rights under the Texas Constitution. However, Appellant did not make these complaints as a basis for his motion to suppress evidence either in the written motion or at the hearing. As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was timely raised to the trial court. TEX. R. APP. P. 33.1(a). Issues raised on appeal must comport with the objections made at trial. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). Because Appellant's due process arguments were not raised as a basis for the motion to suppress evidence, they were not preserved for our review as a basis for overruling the trial court's denial of the motion to suppress. *See, e.g.*, *Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005).

Because Appellant has challenged the trial court's denial of the motion to suppress, we will address it on the grounds raised by Appellant in the trial court. We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). In reviewing a ruling on a motion to suppress, we apply a bifurcated standard of review. *Id.* at 922–23; *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010). We afford almost total deference to the trial court's determination of historical facts and of mixed questions of law and fact that turn on the weight or credibility of the evidence. *Martinez*, 348 S.W.3d at 922–23; *Lujan v. State*, 331 S.W.3d 768, 771 (Tex. Crim. App. 2011). We review de novo the trial court's determination of pure questions of law and mixed questions of law and fact that do not depend on credibility determinations. *Martinez*, 348 S.W.3d at 923.

A trial court's findings may be written or oral. *State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006). When the trial court makes an oral pronouncement on the record at the hearing, we consider those the findings and accord them due

deference. *See State v. Varley*, 501 S.W.3d 273, 277–78 (Tex. App.—Fort Worth 2016, pet. ref'd). Here, the trial court made oral findings of fact and conclusions of law on the record at the suppression hearing. In our review, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *See State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

The trial court made the following findings on the record at the suppression hearing:

> I find that the officer had reasonable suspicion of a traffic violation. It was a valid traffic stop. The officer reasonably detained the vehicle. Ultimately, the officer acquired probable cause to search the vehicle and arrest the defendant. So I find that the motion to suppress should be denied, and I so order.

These findings regarding reasonable suspicion and whether the traffic stop was unduly delayed are legal conclusions that we review de novo. *See State v. Martinez*, No. 11-20-00144-CR, 2021 WL 3919778, at *4 (Tex. App.—Eastland Sept. 2, 2021, no pet. h.) (citing *Lerma v. State*, 543 S.W.3d 184, 192–94 (Tex. Crim. App. 2018)).

A police officer has reasonable suspicion to detain a person if he has specific articulable facts that, combined with rational inferences from those facts, would lead him to reasonably conclude that the person being detained is, has been, or soon will be engaged in criminal activity. *See Terry v. Ohio*, 392 U.S. 1, 21–22 (1968); *Crain v. State*, 315 S.W.3d 43, 52–53 (Tex. Crim. App. 2010). This is an objective standard that focuses on whether there is an objectively justifiable basis for the detention. *Terry*, 392 U.S. at 21–22; *York v. State*, 342 S.W.3d 528, 536 (Tex. Crim. App. 2011). Once the law enforcement officer initiates a stop, he may request and verify (1) the driver's license and proof of insurance, (2) the driver's destination and purpose of the trip, (3) the driver's history for outstanding warrants, and (4) the vehicle's ownership and registration. *Lerma*, 543 S.W.3d at 193 (citing *Rodriguez v.*

*United States*, 575 U.S. 348, 355 (2015)). An officer may inquire into other matters unrelated to the original traffic stop if the inquiry does not unreasonably extend the duration of the stop. *See Parker v. State*, 297 S.W.3d 803, 809–10 (Tex. App.— Eastland 2009, pet. ref'd). If an officer has reasonable suspicion that another offense was or is being committed, he may prolong the detention to investigate the other offense. *Lambeth v. State*, 221 S.W.3d 831, 836 (Tex. App.—Fort Worth 2007, pet. ref'd); *McQuarters v. State*, 58 S.W.3d 250, 256 (Tex. App.—Fort Worth 2001, pet. ref'd).

At the hearing on Appellant's motion to suppress, Officer Mason testified that he stopped Appellant's vehicle based on his failure to signal a turn. He further testified to articulable facts regarding his interaction with Appellant and the passengers that provided reasonable suspicion of a separate crime independent from the original traffic violation. For example, Officer Mason articulated that the passengers were smoking, moving furtively, and sweating. He further testified that Appellant's explanation for where the group was traveling raised his suspicions about the purpose of the trip. During the stop, Appellant could not provide the proper insurance, thereby delaying the purpose of the stop. Finally, Officer Mason testified that one of the passengers failed to identify himself, which not only raised his suspicions, but prompted him to investigate that passenger further in addition to the original traffic stop. He testified that at all times during the stop he was running appropriate checks on all of the vehicle's occupants, preparing a citation,[1] and investigating the passenger who gave false information.

Based on these specific articulated facts and his experience as a law enforcement officer, Officer Mason could have reasonably suspected the existence of other criminal activity. And, in light of all the circumstances, Officer

---

[1]Officer Mason did not complete a citation for this stop because Appellant was ultimately arrested for possession of a controlled substance.

Mason's investigation was efficient and did not unduly delay or prolong the traffic stop. Accordingly, the trial court did not err in denying Appellant's motion to suppress. We overrule Appellant's first issue.

In Appellant's second issue, he contends that the trial court erred by denying his requested jury instruction. At the charge conference, Appellant requested that the following language be included in the charge:

> If you find evidence was destroyed or made unavailable for presentation at the time of trial, if you find the evidence was destroyed or made unavailable for presentation at the time of the trial was in bad faith, if you find the evidence made unavailable was regarding a material fact, you must find the defendant not guilty.

Appellant argued to the trial court that the instruction was appropriate because Officer Daniel knew the footage would be deleted in ninety days and that there was evidence of bad faith because Officers Daniel and Mason made the decision to label the video so that it would be deleted before trial. On appeal, Appellant asserts that the missing body camera footage is the "best evidence" of what happened as Appellant exited the vehicle. The trial court denied Appellant's request.

The State contends that Appellant's complaint is not preserved because he did not request a proper spoliation instruction. Instead, the State contends that Appellant's requested instruction was a misstatement of the law. We review an alleged jury-charge error with a two-step process. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). First, we must determine whether error actually exists in the charge, and second, if error does exist, whether sufficient harm resulted from the error to require reversal. *Id.*; *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994). If the defendant preserved the error by timely objecting to the charge, an appellate court will reverse if the defendant demonstrates that he suffered some harm as a result of the error. *Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009). We review a trial court's decision not to submit an

9

instruction in the jury charge for an abuse of discretion. *See Wesbrook v. State*, 29 S.W.3d 103, 121–22 (Tex. Crim. App. 2000).

Spoliation of evidence concerns the loss or destruction of evidence. *Torres v. State*, 371 S.W.3d 317, 319 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). A spoliation instruction is an adverse inference instruction that allows the jury to infer that the missing evidence would have been favorable to the defendant. *See Jones v. State*, 531 S.W.3d 309, 321 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (citing *Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 22–25 (Tex. 2014)). However, Appellant's requested charge did not instruct the jurors that they may infer that the missing evidence was favorable to him. Instead, the requested charge instructed the jurors to find Appellant not guilty if they found that the missing evidence was material and destroyed in bad faith. Therefore, Appellant's requested charge was not an adverse inference instruction. When, as here, the requested charge is an incorrect statement of the law, the trial court does not abuse its discretion in refusing to submit the requested instruction. *See, e.g.*, *Gaspar Cardoza v. State*, No. 11-17-00124-CR, 2019 WL 2147691, at *3 (Tex. App.—Eastland May 16, 2019, no pet.) (mem. op., not designated for publication).

Furthermore, the record does not show that the trial court erred by not giving a properly worded instruction for spoliation of evidence. The duty to preserve evidence is limited to evidence with an apparent exculpatory value before the evidence was destroyed. *White v. State*, 125 S.W.3d 41, 43 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). A defendant must affirmatively show that the lost evidence was favorable and material to his defense. *Id.* at 44. When the spoliation concerns potentially useful evidence, the defendant bears the burden of establishing that the State lost or destroyed the evidence in bad faith. *Ex parte Napper*, 322 S.W.3d 202, 229 (Tex. Crim. App. 2010). The United States Supreme Court has held that, "unless a criminal defendant can show bad faith on the part of the police,

failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).

Bad faith is more than simply being aware that one's action or inaction could result in the loss of evidence; bad faith entails improper motive, such as personal animus against the defendant or a desire to prevent the defendant from obtaining potentially useful evidence. *Ex parte Napper*, 322 S.W.3d at 238. To find bad faith, there must be some evidence from which an inference of bad faith can be drawn. *Id.* When conduct can, at worst, be described as negligent, the failure to preserve evidence does not rise to the level of a due process violation. *Youngblood*, 488 U.S. at 58.

There is no showing in the record that the missing body camera footage had materially exculpatory value or that it was destroyed in bad faith. Materially exculpatory evidence is evidence that is "both material and favorable to the defendant such that there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different." *Moody v. State*, 551 S.W.3d 167, 170 (Tex. App.—Fort Worth 2017, no pet.). Appellant asserts that the missing body camera footage was materially exculpatory evidence because it is the "best evidence" of what happened and the "only" evidence of whether Appellant put on shoes before exiting the car. We disagree.

Appellant testified that he had to put on shoes before exiting the vehicle. However, both officers testified that they did not see Appellant put on shoes. Therefore, the missing body camera footage would not have provided the "only" evidence. Further, to be material, there must be a reasonable probability that the outcome of the trial would turn on the missing evidence. Here, Officer Daniel's body camera footage is only potentially useful evidence, because, had the footage been preserved, it would only show that Appellant had to put on shoes before exiting

the vehicle. Such evidence would not have exonerated him. *See Gutierrez v. State*, 419 S.W.3d 547, 552 (Tex. App.—San Antonio 2013, no pet.).

Because the evidence is only potentially useful, Appellant must show that the State failed to preserve the video in bad faith.[2] *See Garcia v. State*, 592 S.W.3d 590, 601 (Tex. App.—Eastland 2019, no pet.); *Gutierrez*, 419 S.W.3d at 552. Officer Daniel testified that he did not believe that his body camera contained relevant evidence because he was the backup officer, not the initiating or investigating officer. Officer Daniel categorized his body camera footage using his own judgment and experience, and the police department subsequently deleted the video according to the department's data retention policy. There was no evidence of improper motive or personal animus toward Appellant and no showing of bad faith at trial. Misjudgment is not bad faith. *See Napper*, 322 S.W.3d at 238. Therefore, the trial court did not err by refusing Appellant's request to submit a spoliation instruction. We overrule Appellant's second issue.

### This Court's Ruling

We affirm the judgment of the trial court.

JOHN M. BAILEY

CHIEF JUSTICE

October 28, 2021

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

---

[2]Appellant relies on *Pena v. State* for the proposition that he does not need to show bad faith for a Texas due course of law violation. 226 S.W.3d 634 (Tex. App.—Waco 2007), *rev'd on other grounds*, 285 S.W.3d 459 (Tex. Crim. App. 2009). However, we have declined to follow *Pena*. *McGee v. State*, 210 S.W.3d 702, 705 (Tex. App.—Eastland 2006, no pet.); *see Snell v. State*, 324 S.W.3d 682, 684 (Tex. App.—Fort Worth 2010, no pet.).